## ANNA MOHR v. CORNELIUS WILLIAMS.[1]

### June 23, 1905.

### Nos. 14,312, 14,360—(94, 95).

**Excessive Damages—Review.**

Whether a new trial upon the ground of excessive or inadequate damages should be granted or refused, or whether the verdict should be reduced where excessive, rests in the sound judicial discretion of the trial court, in reviewing which this court will be guided by the general rule applicable to other discretionary orders.

**Assault—Intent.**

It is unnecessary to show in a civil action for an assault and battery that defendant intended by the act complained of to injure the plaintiff. It is sufficient if it appear that the act was unlawful.

**Surgical Operation.**

A surgical operation by a physician upon the body of his patient is wrongful and unlawful where performed without the express or implied consent of the patient. In the absence of such consent, the physician has no authority, implied or otherwise, to perform the same. Consent may be implied from circumstances.

**Consent to Operation.**

Plaintiff consulted defendant concerning a difficulty with her right ear. Defendant examined the organ and advised an operation, to which plaintiff consented. After being placed under the influence of anæsthetics, and when plaintiff was unconscious therefrom, defendant examined her left ear, and found it in a more serious condition than her right, and in greater need of an operation. He called the attention of plaintiff's family physician to the conditions he had discovered, who attended the operation at plaintiff's request, and finally concluded that the operation should be performed upon the left instead of the right ear, to which the family physician made no objection. Plaintiff had not previously experienced any difficulty with her left ear, and was not informed prior to the time she was placed under the influence of anæsthetics that any difficulty existed with reference to it, and she did not consent to an operation thereon. Subsequently, on the claim that the operation seriously impaired

[1] Reported in 104 N. W. 12.

her sense of hearing and was wrongful and unlawful, she brought this action to recover damages for an assault and battery. It is *held*:

(a) That defendant had no authority to perform the operation without plaintiff's consent, express or implied.

(b) That her consent was not expressly given, and whether it should be implied from the circumstances of the case, was a question for the jury to determine.

(c) That, if the operation was not authorized by the express or implied consent of plaintiff, it was wrongful and unlawful, and constituted, in law, an assault and battery.

Action in the district court for Ramsey county to recover $20,000 damages for assault and battery consisting of an alleged unauthorized surgical operation performed by defendant upon plaintiff's ear. The case was tried before Olin B. Lewis, J., and a jury, which rendered a verdict in favor of plaintiff for $14,322.50. From separate orders granting a motion for a new trial and denying a motion for judgment, notwithstanding the verdict, plaintiff and defendant respectively appealed. Orders affirmed.

*H. A. Loughran* and *S. C. Olmstead,* for plaintiff.

Defendant was not entitled to avail himself by way of a set-off, counterclaim or in diminution of damages, of any supposed benefit which it was claimed had accrued to the plaintiff in consequence of the operation which was actually performed upon her left ear. Defendant could not profit by his own wrongdoing. Loomis v. Greene, 7 Me. 386; Russell v. Blake, 2 Pick. 505; Hanmer v. Wilsey, 17 Wend. 91; Bird v. Womack, 69 Ala. 390; Dallam v. Fitler, 6 W. & S. (Pa.) 323.

The verdict was not excessive and should not have been set aside. For the rule in such cases, see Blume v. Scheer, 83 Minn. 409. And see the following cases where verdicts for substantial amounts were sustained. Vant Hul v. Great Northern Ry. Co., 90 Minn. 329; Sloniker v. Great Northern Ry. Co., 76 Minn. 306; Shaw v. Boston, 8 Gray, 45; Illinois v. Treat, 75 Ill. App. 327; North Chicago v. Fitzgibbons, 79 Ill. App. 632; Illinois v. Souders, 79 Ill. App. 41; Morgan v. Southern, 95 Cal. 501, 510; Sears v. Seattle, 6 Wash. 227; Illinois v. Cheek, 152 Ind. 663; Erickson v. Brooklyn, 11 Misc. (N. Y.) 662;

Mitchell v. Broadway, 70 Hun, 387; Pratt v. Pioneer Press Co., 32 Minn. 217.

Consent of plaintiff to the operation was necessary. 1 Kinkead, Torts, § 375. Under the circumstances, the defendant had no right to operate upon the plaintiff's left ear without her consent. No express consent was given, and no consent can be implied from what she said or did. The defendant might easily, and without any danger to his patient have allowed her to recover consciousness, postponed his operation, advised her of the condition of her left ear, explained to her the risks and danger of the operation and its probable advantages, and given her the opportunity to be the final arbiter as to whether or not she would take her chances with the operation, or living without it. Reg. v. Bennett, 4 F. & F. 1105; Reg. v. Sinclair, 13 Cox C. C. 28; Richie v. State, 58 Ind. 355; State v. Long, 93 N. C. 542.

In doing an unlawful act one becomes liable for its consequences no matter what his intentions are. Addison, Torts, 689; Bullock v. Babcock, 3 Wend. 391; Johnson v. McConnel, 15 Hun, 293; Lander v. Seaver, 32 Vt. 114; Vosburg v. Putney, 80 Wis. 523.

*Keith, Evans, Thompson & Fairchild* and *John D. O'Brien,* for defendant.

The order granting a new trial should be affirmed under the rule established in the case of Hicks v. Stone, 13 Minn. 398 (434).

The verdict being so excessive it was the duty of the court to set it aside altogether. Plaunt v. Railway Transfer Co., 90 Minn. 499. It cannot be accounted for upon any other theory than that of passion or prejudice on the part of the jury. Blume v. Scheer, 83 Minn. 409; Pratt v. Pioneer Press Co., 32 Minn. 217; Woodward v. Glidden, 33 Minn. 108, 109; Dennis v. Johnson, 42 Minn. 301, 303. An element which tended to influence the jury improperly and prejudice them in returning their verdict, is the fact that they were given to understand that an insurance company was engaged in the defense of the case. This is recognized as damaging to the defendant. Barg v. Bousfield, 65 Minn. 355, 360; Cosselmon v. Dunfee, 172 N. Y. 507; Sawyer v. J. M. Arnold Shoe Co., 90 Me. 369; Iverson v. McDonnell, 36 Wash. 73; Gahagan v. Aermotor Co., 67 Minn. 252.

Defendant had plaintiff's consent to perform the operation. This is not a case where defendant has taken a person who did not wish to become his patient and forcibly performed an operation upon her. The operation was upon one who had herself sought defendant and had established the relation of physician and patient between them. From the relation thus established, and from what the plaintiff knew the defendant did in respect to looking for disease in the left ear, and from the advice he had given and she had adopted with respect to an operation for a kindred but much less threatening condition in the right ear, it follows that the defendant must be deemed to have had the consent of the plaintiff to do what was done in this case, when the defendant found the imminent and alarming conditions arising in the left ear after plaintiff became unconscious. McClallen v. Adams, 19 Pick. 333; O'Brien v. Cunard, 154 Mass. 272.

Independently of consent, the physician who, under such circumstances as exist in this case, performs successfully an operation which is the best thing to do to arrest disease and save life, should be held fully justified in what he has done, and bound to have taken the course he has followed. Pollock, Torts, 146.

Defendant's intention was not to injure but to benefit plaintiff, who at the time was his patient and in his care. His action, in view of this relation and because of the absence of fault and of wrong intention on his part, did not constitute an assault and battery. Bigelow, Lead. Cas. Torts, 230, 231; Hoffman v. Eppers, 41 Wis. 251; Addison, Torts, 692; Cooley, Torts, 162; 3 Cyc. 1068; Jaggard, Torts, 437, 438; 2 Greenleaf, Ev. §§ 84, 85; Pollock, Torts, 8.

BROWN, J.[2]

Defendant is a physician and surgeon of standing and character, making disorders of the ear a specialty, and having an extensive practice in the city of St. Paul. He was consulted by plaintiff, who complained to him of trouble with her right ear, and, at her request, made an examination of that organ for the purpose of ascertaining its condition. He also at the same time examined her left ear, but, owing to foreign substances therein, was unable to make a full and complete diagnosis at that time. The examination of her right ear disclosed a large perforation in the lower portion of the drum membrane, and a large polyp

[2] JAGGARD, J., took no part.

in the middle ear, which indicated that some of the small bones of the middle ear (ossicles) were probably diseased. He informed plaintiff of the result of his examination, and advised an operation for the purpose of removing the polyp and diseased ossicles. After consultation with her family physician, and one or two further consultations with defendant, plaintiff decided to submit to the proposed operation. She was not informed that her left ear was in any way diseased, and understood that the necessity for an operation applied to her right ear only. She repaired to the hospital, and was placed under the influence of anæsthetics; and, after being made unconscious, defendant made a thorough examination of her left ear, and found it in a more serious condition than her right one. A small perforation was discovered high up in the drum membrane, hooded, and with granulated edges, and the bone of the inner wall of the middle ear was diseased and dead. He called this discovery to the attention of Dr. Davis—plaintiff's family physician, who attended the operation at her request—who also examined the ear and confirmed defendant in his diagnosis. Defendant also further examined the right ear, and found its condition less serious than expected, and finally concluded that the left, instead of the right, should be operated upon; devoting to the right ear other treatment. He then performed the operation of ossiculectomy on plaintiff's left ear; removing a portion of the drum membrane, and scraping away the diseased portion of the inner wall of the ear. The operation was in every way successful and skilfully performed. It is claimed by plaintiff that the operation greatly impaired her hearing, seriously injured her person, and, not having been consented to by her, was wrongful and unlawful, constituting an assault and battery; and she brought this action to recover damages therefor.

The trial in the court below resulted in a verdict for plaintiff for $14,322.50. Defendant thereafter moved the court for judgment notwithstanding the verdict, on the ground that, on the evidence presented, plaintiff was not entitled to recover, or, if that relief was denied, for a new trial on the ground, among others, that the verdict was excessive; appearing to have been given under the influence of passion and prejudice. The trial court denied the motion for judgment, but granted a new trial on the ground, as stated in the order, that the damages were excessive. Defendant appealed from the order denying the

motion for judgment, and plaintiff appealed from the order granting a new trial.

1. It is contended on plaintiff's appeal that the trial court erred in granting a new trial of the action; that the order should be reversed, and the verdict reinstated. The new trial was granted, as already stated, on the ground that the verdict was excessive, appearing to have been given under the influence of passion and prejudice; and the point made is that the evidence, as contained in the record, does not sustain this conclusion, within the limits of the rule applicable to motions for a new trial based upon that ground. Considerable confusion has existed with reference to the proper rule guiding this court in reviewing orders of this kind ever since the decision in Nelson v. Village of West Duluth, 55 Minn. 497, 57 N. W. 149, wherein it was said that the rule of Hicks v. Stone, 13 Minn. 398 (434) did not apply. Several decisions involving the same question have since been filed, and the bar is apparently in some doubt as to the true rule upon the subject.

We are not disposed to review the former decisions of the court, but, for future guidance, take this occasion to say (that there may be no further controversy in the matter) that in actions to recover unliquidated damages, such as actions for personal injuries, libel, and slander, and similar actions, where the plaintiff's damages cannot be computed by mathematical calculation, and are not suceptible to proof by opinion evidence, and are within the discretion of the jury, the motion for new trial on the ground of excessive or inadequate damages should be made under the fourth subdivision of section 5398, G. S. 1894; and in such cases the court will not interfere with the verdict unless the damages awarded appear clearly to be excessive or inadequate, as the case may be, and to have been given under the influence of passion or prejudice. On the other hand, in all actions, whether sounding in tort or contract, where the amount of damages depends upon opinion evidence, as the value of property converted or destroyed, the nature and extent of injuries to person or property, the motion for new trial should be made under the fifth subdivision of the statute referred to; and in cases of doubt, or where both elements of damages are involved, under both subdivisions. State v. Shevlin-Carpenter Co., 66 Minn. 217, 68 N. W. 973.

But in any case, whether a new trial upon the ground of excessive

or inadequate damages should be granted or refused, or whether the verdict should be reduced, rests in the sound judicial discretion of the trial court (Craig v. Cook, 28 Minn. 232, 9 N. W. 712; Pratt v. Pioneer Press Co., 32 Minn. 217, 18 N. W. 836, 20 N. W. 87), in reviewing which this court will be guided by the general rule applicable to other discretionary orders. We applied this rule at the present term in Epstein v. Chicago Great Western Ry. Co., infra, page 516. Where the damages are susceptible of ascertainment by calculation, and the jury return either an inadequate or excessive amount, it is the duty of the court to grant unconditionally a new trial for the inadequacy of the verdict, or, if excessive, a new trial unless plaintiff will consent to a reduction of the amount given by the jury.

Applying the rule stated to the case at bar, we are clear the trial court did not abuse its discretion in granting defendant's motion for a new trial, and its order on plaintiff's appeal is affirmed. We cannot adopt the suggestion of counsel for plaintiff that this court now reduce the verdict to a proper amount, for there is no verdict upon which such an order could act. It was set aside by the trial court.

2. We come then to a consideration of the questions presented by defendant's appeal from the order denying his motion for judgment notwithstanding the verdict. It is contended that final judgment should be ordered in his favor for the following reasons: (a) That it appears from the evidence received on the trial that plaintiff consented to the operation on her left ear. (b) If the court shall find that no such consent was given, that, under the circumstances disclosed by the record, no consent was necessary. (c) That, under the facts disclosed, an action for assault and battery will not lie; it appearing conclusively, as counsel urge, that there is a total lack of evidence showing or tending to show malice or an evil intent on the part of defendant, or that the operation was negligently performed.

We shall consider first the question whether, under the circumstances shown in the record, the consent of plaintiff to the operation was necessary. If, under the particular facts of this case, such consent was unnecessary, no recovery can be had, for the evidence fairly shows that the operation complained of was skilfully performed and of a generally beneficial nature. But if the consent of plaintiff was necessary, then the further questions presented become important. This

particular question is new in this state. At least, no case has been called to our attention wherein it has been discussed or decided, and very few cases are cited from other courts. We have given it very deliberate consideration, and are unable to concur with counsel for defendant in their contention that the consent of plaintiff was unnecessary.

The evidence tends to show that, upon the first examination of plaintiff, defendant pronounced the left ear in good condition, and that, at the time plaintiff repaired to the hospital to submit to the operation on her right ear, she was under the impression that no difficulty existed as to the left. In fact, she testified that she had not previously experienced any trouble with that organ. It cannot be doubted that ordinarily the patient must be consulted, and his consent given, before a physician may operate upon him.

It was said in the case of Pratt v. Davis, 37 Chicago Leg. News, 213, referred to and commented on in 60 Cent. Law J. 452: "Under a free government, at least, the free citizen's first and greatest right, which underlies all others—the right to the inviolability of his person; in other words the right to himself—is the subject of universal acquiescence, and this right necessarily forbids a physician or surgeon, however skilful or eminent, who has been asked to examine, diagnose, advise, and prescribe (which are at least necessary first steps in treatment and care), to violate, without permission, the bodily integrity of his patient by a major or capital operation, placing him under an anæsthetic for that purpose, and operating upon him without his consent or knowledge."

1 Kinkead Torts, § 375, states the general rule on this subject as follows: "The patient must be the final arbiter as to whether he shall take his chances with the operation, or take his chances of living without it. Such is the natural right of the individual, which the law recognizes as a legal right. Consent, therefore, of an individual, must be either expressly or impliedly given before a surgeon may have the right to operate." There is logic in the principle thus stated, for, in all other trades, professions, or occupations, contracts are entered into by the mutual agreement of the interested parties, and are required to be performed in accordance with their letter and spirit. No reason occurs to us why the same rule should not apply between

physician and patient.   If the physician advises his patient to submit to a particular operation, and the patient weighs the dangers and risks incident to its performance, and finally consents, he thereby, in effect, enters into a contract authorizing his physician to operate to the extent of the consent given, but no further.

It is not, however, contended by defendant that under ordinary circumstances consent is unnecessary, but that, under the particular circumstances of this case, consent was implied; that it was an emergency case, such as to authorize the operation without express consent or permission.   The medical profession has made signal progress in solving the problems of health and disease, and they may justly point with pride to the advancements made in supplementing nature and correcting deformities, and relieving pain and suffering.   The physician impliedly contracts that he possesses, and will exercise in the treatment of patients, skill and learning, and that he will exercise reasonable care and exert his best judgment to bring about favorable results.   The methods of treatment are committed almost exclusively to his judgment, but we are aware of no rule or principle of law which would extend to him free license respecting surgical operations.   Reasonable latitude must, however, be allowed the physician in a particular case; and we would not lay down any rule which would unreasonably interfere with the exercise of his discretion, or prevent him from taking such measures as his judgment dictated for the welfare of the patient in a case of emergency.   If a person should be injured to the extent of rendering him unconscious, and his injuries were of such a nature as to require prompt surgical attention, a physician called to attend him would be justified in applying such medical or surgical treatment as might reasonably be necessary for the preservation of his life or limb, and consent on the part of the injured person would be implied.   And again, if, in the course of an operation to which the patient consented, the physician should discover conditions not anticipated before the operation was commenced, and which, if not removed, would endanger the life or health of the patient, he would, though no express consent was obtained or given, be justified in extending the operation to remove and overcome them.

But such is not the case at bar.   The diseased condition of plaintiff's left ear was not discovered in the course of an operation on the right

which was authorized, but upon an independent examination of that organ, made after the authorized operation was found unnecessary. Nor is the evidence such as to justify the court in holding, as a matter of law, that it was such an affection as would result immediately in the serious injury of plaintiff, or such an emergency as to justify proceeding without her consent. She had experienced no particular difficulty with that ear, and the questions as to when its diseased condition would become alarming or fatal, and whether there was an immediate necessity for an operation, were, under the evidence, questions of fact for the jury.

3. The contention of defendant that the operation was consented to by plaintiff is not sustained by the evidence. At least, the evidence was such as to take the question to the jury. This contention is based upon the fact that she was represented on the occasion in question by her family physician; that the condition of her left ear was made known to him, and the propriety of an operation thereon suggested, to which he made no objection. It is urged that by his conduct he assented to it, and that plaintiff was bound thereby. It is not claimed that he gave his express consent. It is not disputed but that the family physician of plaintiff was present on the occasion of the operation, and at her request. But the purpose of his presence was not that he might participate in the operation, nor does it appear that he was authorized to consent to any change in the one originally proposed to be made. Plaintiff was naturally nervous and fearful of the consequences of being placed under the influence of anæsthetics, and the presence of her family physician was requested under the impression that it would allay and calm her fears. The evidence made the question one of fact for the jury to determine.

4. The last contention of defendant is that the act complained of did not amount to an assault and battery. This is based upon the theory that, as plaintiff's left ear was in fact diseased, in a condition dangerous and threatening to her health, the operation was necessary, and, having been skilfully performed at a time when plaintiff had requested a like operation on the other ear, the charge of assault and battery cannot be sustained; that, in view of these conditions, and the claim that there was no negligence on the part of defendant, and an entire absence of any evidence tending to show an evil intent, the court should say, as a

matter of law, that no assault and battery was committed, even though she did not consent to the operation. In other words, that the absence of a showing that defendant was actuated by a wrongful intent, or guilty of negligence, relieves the act of defendant from the charge of an unlawful assault and battery.

We are unable to reach that conclusion, though the contention is not without merit. It would seem to follow from what has been said on the other features of the case that the act of defendant amounted at least to a technical assault and battery. If the operation was performed without plaintiff's consent, and the circumstances were not such as to justify its performance without, it was wrongful; and, if it was wrongful, it was unlawful. As remarked in 1 Jaggard, Torts, 437, every person has a right to complete immunity of his person from physical interference of others, except in so far as contact may be necessary under the general doctrine of privilege; and any unlawful or unauthorized touching of the person of another, except it be in the spirit of pleasantry, constitutes an assault and battery. In the case at bar, as we have already seen, the question whether defendant's act in performing the operation upon plaintiff was authorized was a question for the jury to determine. If it was unauthorized, then it was, within what we have said, unlawful. It was a violent assault, not a mere pleasantry; and, even though no negligence is shown, it was wrongful and unlawful. The case is unlike a criminal prosecution for assault and battery, for there an unlawful intent must be shown. But that rule does not apply to a civil action, to maintain which it is sufficient to show that the assault complained of was wrongful and unlawful or the result of negligence. 1 Addison, Torts, 689; Lander v. Seaver, 32 Vt. 114; Vosburg v. Putney, 80 Wis. 523, 50 N. W. 403.

The amount of plaintiff's recovery, if she is entitled to recover at all, must depend upon the character and extent of the injury inflicted upon her, in determining which the nature of the malady intended to be healed and the beneficial nature of the operation should be taken into consideration, as well as the good faith of the defendant.

Orders affirmed.